1
2
3
4
5
6
7

O

8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16

| | |
|---|---|
| ANTHONY MARTINEZ,<br><br>             Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>             Defendant. | Case No. EDCV 13-1686-OP<br><br>MEMORANDUM OPINION AND<br>ORDER |

17
18

The Court[1] now rules as follows with respect to the disputed issue listed in
the Joint Stipulation ("JS").[2]

19
20
21

/ / /
/ / /
/ / /

22

23
24

   [1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before
the United States Magistrate Judge in the current action.  (ECF Nos. 10, 11.)

25
26
27
28

   [2] As the Court advised the parties in its Case Management Order, the
decision in this case is made on the basis of the pleadings, the Administrative
Record, and the Joint Stipulation filed by the parties.  In accordance with Rule
12(c) of the Federal Rules of Civil Procedure, the Court has determined which
party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).
(ECF No. 7 at 3.)

1

**I.**

**DISPUTED ISSUE**

As reflected in the Joint Stipulation, the sole disputed issue raised by Plaintiff as the ground for reversal and/or remand is whether the ALJ properly considered the relevant medical evidence of record.  (JS at 3-4.)

**II.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

**III.**

**DISCUSSION**

**A.    The ALJ's Findings.**

The ALJ found that Plaintiff had the severe impairments of mood disorder, not otherwise specified ("NOS"); and antisocial personality disorder with substantial history of substance abuse and current intermittent abuse of alcohol. (Administrative Record ("AR") at 18.)  The ALJ also found that Plaintiff had the

1  non-severe impairments of lower back pain; diabetes mellitus; hypertension; third
2  finger cut; hepatitis C by history; and shoulder pain, but that these did not cause
3  more than a minimal limitation in Plaintiff's ability to perform basic work
4  activities.  (Id.)

5      The ALJ determined that Plaintiff has the residual functional capacity
6  ("RFC") to perform the full range of work at all levels, except that he is limited to
7  simple tasks in a non-public setting; precluded from operating hazardous
8  machinery and being involved with safety operations; precluded from highly fast-
9  paced work such as rapid assembly; and unable to work in teams.  (Id. at 21.)

10     Relying on the testimony of the vocational expert ("VE"), the ALJ
11 determined that Plaintiff was able to perform such work as bench assembler
12 (Dictionary of Occupational Titles ("DOT") No. 706.684-022); assembler
13 electrical equipment (DOT No. 729.684-022); and industrial cleaner (DOT No.
14 381.687-018).  (AR at 25.)  The VE also testified that there were jobs available if
15 the RFC was further restricted to light work.  (Id. at 26, 82-83.)

16 **B.    The ALJ Properly Considered and Weighed the Medical Evidence.**

17      **1.    Chavez v. Bowen.**

18      The principles of res judicata apply to administrative decisions.  However,
19 the doctrine is not as rigidly applied to administrative proceedings as it is to
20 judicial proceedings.  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988); see
21 also Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988).  Social Security
22 Acquiescence Ruling 97-4(9), adopting Chavez, applies to cases involving a
23 subsequent disability claim with an unadjudicated period arising under the same
24 title of the Social Security Act as a prior claim on which there has been a final
25 administrative decision that the claimant is not disabled.  Acquiescence Ruling
26 97-4(9), 1997 WL 742758.  A previous final determination of nondisability creates
27 a presumption of continuing nondisability with respect to any subsequent
28 unadjudicated period of alleged disability.  Lester v. Chater, 81 F.3d 821, 827 (9th

1   Cir. 1995).

2       However, the presumption may be overcome by a showing of "changed

3   circumstances." Id. at 827-28; see also Chavez, 844 F.2d at 693; Taylor v.

4   Heckler, 765 F.2d 872, 875 (9th Cir. 1985).  In order to show "changed

5   circumstances," the evidence must establish that the claimant suffers from an

6   impairment that indicates a greater disability.  Chavez, 844 F.2d at 693.  Changed

7   circumstances include a change in age category, an increase in the severity of the

8   claimant's impairment(s), the alleged existence of an impairment not previously

9   considered, or a change in the criteria for determining disability.  Acquiescence

10  Ruling 97-4(9), 1997 WL 742758, at *3.

11      Acquiescence Ruling 97-4(9) directs adjudicators to follow a two-step

12  inquiry.  Id.  First, adjudicators must apply a presumption of continuing

13  non-disability.  A "claimant may rebut this presumption by showing a 'changed

14  circumstance' affecting the issue of disability with respect to the unadjudicated

15  period." Id.  Second, if the claimant rebuts the presumption, adjudicators must

16  give effect to certain findings "contained in the final decision by an ALJ or the

17  Appeals Council on the prior claim, when adjudicating the subsequent claim,"

18  including the findings of a claimant's RFC, education, or work experience.  Id.

19  "Adjudicators must adopt such a finding from the final decision on the prior claim

20  in determining whether the claimant is disabled with respect to the unadjudicated

21  period unless there is new and material evidence relating to such a finding or there

22  has been a change in the law, regulations or rulings affecting the finding or the

23  method for arriving at the finding." Id.

24      In this case, in August 2009 the previous ALJ found that Plaintiff had the

25  severe impairments of mood disorder, NOS; antisocial personality disorder with

26  substantial history of substance abuse; and current intermittent use of alcohol.

27  (AR at 90.)  That decision described Plaintiff's RFC as the ability to perform a full

28  range of work at all levels, with the following nonexertional limitations:  can

4

1 perform moderately complex tasks up to four to five steps instructions in a
2 nonpublic setting; precluded from operating hazardous machinery; cannot be
3 involved with safety operations; and precluded from highly fast-paced work, such
4 as rapid assembly. (Id. at 92.)

5      In the decision at issue here, the ALJ relied on this finding because it had
6 been based on the opinion of a testifying medical expert, but also noted that
7 Plaintiff's mental symptoms, specifically his paranoia, "appear to have increased
8 since the prior decision." (Id. at 18, 23.)  The ALJ also found Plaintiff able to
9 perform work at all exertional levels, but, in addition to also precluding him from
10 operating hazardous machinery or being involved with safety operations,
11 additionally further limited him to simple tasks in a nonpublic setting; and also
12 precluded him from working in teams. (Id. at 21.)  The ALJ again concluded
13 Plaintiff was not disabled. (Id. at 26.)

14     **2.**    **Treating Physicians.**

15      In evaluating medical opinions, the case law and regulations distinguish
16 among the opinions of three types of physicians: (1) those who treat the claimant
17 (treating physicians); (2) those who examine but do not treat the claimant
18 (examining physicians); and (3) those who neither examine nor treat the claimant
19 (nonexamining or reviewing physicians). See 20 C.F.R. §§ 404.1502, 404.1527,
20 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).
21 Generally, the opinions of treating physicians are given greater weight than those
22 of other physicians, because treating physicians are employed to cure and
23 therefore have a greater opportunity to know and observe the claimant. Orn v.
24 Astrue, 495 F.3d 625, 631 (9th Cir.2007); Smolen v. Chater, 80 F.3d 1273, 1285
25 (9th Cir. 1996).  The ALJ may only give less weight to a treating physician's
26 opinion that conflicts with the medical evidence if the ALJ provides explicit and
27 legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31; see
28 also Orn, 495 F.3d at 632-33; SSR 96-2p.  Similarly, "the Commissioner must

1  provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of

2  an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908

3  F.2d 502, 506 (9th Cir.1990)).  Even where an examining physician's opinion is

4  contradicted by another doctor, the ALJ must still provide specific and legitimate

5  reasons supported by substantial evidence to properly reject it.  Id. at 830-31

6  (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)).

7  ### a.   Plaintiff's Mental Impairments.

8  Plaintiff contends that the ALJ failed to properly consider the relevant

9  medical evidence of record supportive of his claim of mental disability.  (JS at 4.)

10  Plaintiff states that the ALJ failed to properly consider multiple statements from

11  Plaintiff's treating psychiatrist, Arthur Amador, M.D., which reflected Plaintiff's

12  "multiple symptoms and limitations," and stated that Plaintiff was incapable of

13  working a forty-hour work week due to his mental limitations.  (Id. at 4, 7.)

14  On August 3, 2010, Dr. Amador prepared a mental health impairment

15  assessment.  (AR at 276.)  In that assessment, Dr. Amador diagnosed Plaintiff with

16  schizoaffective disorder, bipolar type; and polysubstance dependence in sustained

17  full remission.  (Id.)  Dr. Amador also noted that Plaintiff's thought processes

18  were concrete and ruminative; he had paranoid thoughts; his memory and

19  judgment were mildly impaired; there was evidence of insomnia, depression and

20  anxiety; and he exhibited social withdrawal.  (Id.)  Dr. Amador opined that

21  Plaintiff could not maintain a sustained level of concentration, could not sustain

22  repetitive tasks for an extended period, could not adapt to new or stressful

23  situations, and was unable to interact appropriately with family, strangers, co-

24  workers, and supervisors.  (Id.)  Dr. Amador viewed Plaintiff's prognosis as

25  "guarded" and stated that he could not complete a forty-hour work week without

26  decompensating.  (Id.)  Dr. Amador also stated that Plaintiff had been sober since

27  July 14, 2009, "but continues to exhibit symptoms of depression, paranoia,

28  isolation, insomnia," and had complained of anxiety attacks.  (Id.)  Dr. Amador

1    noted that Plaintiff's psychiatric medication had been recently switched, as he had
2    been experiencing an increase in his blood glucose and lipids. (Id.)

3           On November 15, 2011, Dr. Amador prepared another assessment. (Id. at
4    371.)  He again diagnosed Plaintiff with schizoaffective disorder, bipolar type.
5    (Id.)  Dr. Amador noted Plaintiff's thoughts as ruminative and paranoid; reported
6    hallucinations (auditory) and delusions; moderately impaired memory and
7    judgment; and evidence of confusion, insomnia, depression, anxiety, decreased
8    energy, and isolation.  (Id.)  Dr. Amador noted social withdrawal and avolition.
9    (Id.)  Dr. Amador termed Plaintiff's prognosis "very guarded" and noted that
10   Plaintiff complained of "hallucinations 'voices, yelling & screaming,' (+) paranoia
11   'people watching me', despite trials of multiple atypical & typical antipsychotics .
12   . . ." (Id.)  Dr. Amador noted Plaintiff's difficulty in functioning and denial of any
13   substance abuse, and again found Plaintiff could not complete a forty-hour work
14   week without decompensating.  (Id.)

15          With regard to Dr. Amador's opinion, the ALJ stated:

16          [I]t has been opined on August 3, 2010, that the claimant is unable
17          to maintain a sustained level of concentration, sustain repetitive tasks for
18          an extended period[,] adapt to new or stressful situations, and that he
19          cannot complete a forty hour work week without decompensating and
20          that the prognosis is guarded during a period of sobriety. The claimant's
21          medications were still being switched around, the undersigned finds this
22          opinion to be inconsistent with and unsupported by the record as a
23          whole and is granting it very little weight.

24                 . . . .

25          While the treatment records diagnose the claimant with a bipolar

7

1    schizoaffective disorder, the undersigned relies upon the prior decision[3]
2    which reveals that the claimant has a mood disorder not otherwise
3    specified and antisocial personality disorder with a substantial history
4    of polysubstance abuse with current intermittent use of alcohol, which
5    was based upon the testimony of the psychological expert who testified
6    at that hearing.

7    (Id. at 23 (citations omitted)).

8    With regard to the prior hearing decision referenced by and relied on by the
9    ALJ, the former ALJ indicated in his decision that the medical expert and the
10   consultative examiner indicated that Plaintiff had put forth only "sub-optimal
11   effort" and, indeed, gave the impression of malingering throughout the
12   psychological evaluation.[4] (Id. at 94, 96-97, 98.) The ALJ noted that treatment
13   records also supported the fact that when Plaintiff follows his prescribed treatment
14   he has "good mood, did well, and was stable on his medication without side
15   effects." (Id. at 96.) Additionally, a review of the treatment records from
16   Riverside Mental Health show a long history of poly substance abuse (in self-
17   reported remissions) and incarcerations. (See, e.g., id. at 279 (last reported use of
18   heroin was October 2008, previous use of cocaine and PCP), 288 (past
19   convictions/legal problems for shoplifting, commercial burglaries, robbery, petty
20   theft).) And, when compliant with his treatment, the records reflect that Plaintiff's
21   symptoms were somewhat controlled. (Id. at 23, 280.) The ALJ's reliance on the
22   prior ALJ's decision, which in turn was based on the findings of the medical
23   expert and consultative examiner regarding Plaintiff's mental impairments, was
24   supported by the record and was not error. Chavez, 844 F.2d at 693.

25
26       [3] Plaintiff was found not disabled in an August 26, 2009 decision. (AR at
     15, 85-101.) Plaintiff does not raise an issue regarding his credibility.
27
28       [4] The diagnoses of schizophrenia and bipolar disorder were considered and
     rejected by the testifying medical expert at the prior hearing. (AR at 98.)

1    With regard to the current hearing, on August 12, 2010, R. Paxton, M.D.

2    reviewed the evidence of record and determined that Plaintiff could do simple

3    work at two-hour intervals in a non-public setting, and would be able to

4    concentrate and adapt.  (AR at 343.)  On December 15, 2010, K.J. Loomis, M.D.,

5    psychiatrist, reviewed the same evidence, as well as some evidence submitted after

6    August 12, 2010, and concurred with Dr. Paxton.  (Id. at 368.)  The ALJ found

7    that these opinions were consistent with the medical evidence of record, including

8    the records "supplied by the claimant's representative," "except for the

9    inconsistent findings of repeated episodes of decompensation," and that they

10   supported the ALJ's finding of a more restrictive mental RFC than previously

11   found.  (Id. at 24.)

12       It appears that the ALJ primarily rejected only that portion of Dr. Amador's

13   opinion that suggested Plaintiff could not "complete a 40 hr. work week without

14   decompensating" as being unsupported by clinical findings or the medical record

15   as a whole.  See 20 CFR 404.1527(c)(3); cf. Tonapetyan v. Halter, 242 F.3d 1144,

16   1149 (9th Cir. 2001) (lack of clinical findings is specific and legitimate reason for

17   rejecting treating physician's opinions); Khounesavatdy v. Astrue, 549 F. Supp. 2d

18   1218, 1229 (E.D. Cal. 2008) ("[I]t is established that it is appropriate for an ALJ to

19   consider the absence of supporting findings, and the inconsistency of conclusions

20   with the physician's own findings, in rejecting a physician's opinion.") (citing

21   Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan,

22   981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751

23   (9th Cir. 1989)).  As such, the ALJ's RFC took into account Dr. Amador's

24   opinions that Plaintiff was unable to maintain a sustained level of concentration,

25   sustain repetitive tasks for an extended period, adapt to new or stressful situations,

26   and interact appropriately with others, by limiting Plaintiff to simple tasks in a

27   non-public setting; precluding him from operating hazardous machinery and being

28   involved with safety operations; precluding him from highly fast-paced work such

9

1   as rapid assembly; and precluding him from working in teams.

2       Even if the ALJ implicitly rejected all of Dr. Amador's opinions, the Court

3   agrees that there is nothing in Dr. Amador's records, or in the medical record as a

4   whole, to support the more extreme limitation suggested in Dr. Amador's reports.

5   Moreover, there was no error in relying on the findings and opinions of the

6   psychological examiner and testifying medical expert as reflected in the prior

7   decision (see Chavez, 844 F.2d at 693), and on more recent opinions of the

8   reviewing examiners for the purposes of this hearing.

9       Accordingly, the Court finds that the ALJ provided specific and legitimate

10  reasons for rejecting Dr. Amador's opinions, and there was no error in giving

11  greater weight to the opinions of the psychological consultants who examined the

12  record "and opined that [Plaintiff] has limitations consistent with those contained

13  in the residual functional capacity" delineated by the ALJ.

14                    **b.    Lower Back Impairment.**

15      At step two of the decision-making process, the ALJ determined that

16  Plaintiff's lower back pain was not a severe impairment within the meaning of the

17  regulations.  (AR at 18.)  Plaintiff complains that the ALJ failed to properly

18  consider Plaintiff's medical records relating to his lower back condition.  (JS at 8.)

19  Specifically, he notes that on September 15, 2010, November 6, 2010, and

20  November 16, 2010, he was seen in the emergency room for low back pain and

21  given morphine for pain relief.  (AR at 434, 440, 447, 448, 452.)  On March 15,

22  2011, he was treated in the pain/orthopedic spine clinic (id. at 388, 395) where he

23  was noted to have difficulty walking, with an antalgic gait, difficulty getting

24  on/off the exam table, tenderness to palpation, and decreased range of motion in

25  the lumbar spine (id. at 392), decreased sensation in his right lower extremity (id.

26  at 393), and muscle spasms (id. at 396); additionally he had been referred for a

27  series of three epidural steroid injections (id. at 455).  As a result of all this,

28  Plaintiff contends that his back condition "would certainly prevent him from

                                    10

1  lifting and performing work at the heavy exertional level, and medium exertional

2  level, and perhaps the light exertional level as well." (JS at 9.)

3      An impairment may be found "not severe" at step two of the

4  Commissioner's sequential evaluation process only where the impairment "has no

5  more than a minimal effect" on the claimant's ability to perform basic work

6  activities. Basic work activities are the "abilities and aptitudes necessary to do

7  most jobs," including physical functions like walking, standing, sitting, lifting,

8  pushing, pulling, reaching, carrying, and handling. 20 C.F.R. §§ 404.1521(b) &

9  416.921(b). If a finding of non-severity is not "clearly established by medical

10  evidence," adjudication must continue through the sequential evaluation process.

11  See Soc. Sec. Ruling[5] ("SSR") 85-28; SSR 96-3p; see also Yuckert v. Bowen, 841

12  F.2d 303, 306-07 (9th Cir. 1988); McDonald v. Sec'y of Health & Human Serv.,

13  795 F.2d 1118, 1124-25 (1st Cir. 1986).

14      In this case, a review of the ALJ's decision shows no error with respect to

15  his finding that Plaintiff's back pain was non-severe. Moreover, although found to

16  be non-severe, the ALJ nevertheless considered it among all the evidence when

17  determining Plaintiff's RFC. (See, e.g., AR at 19, 23.) For instance, the ALJ

18  reviewed Plaintiff's medical records that showed his back pain on September 15,

19  2010, which lasted for four days, was relieved with medication (id. at 18 (citing id.

20  at 445-48)); on November 6, 2010, he went to the emergency department

21  complaining of back pain where it was observed that his "neurological [exam] and

22  gait were normal, he had full strength in major muscle groups and his sensation

23  was intact, despite complaints of back pain" (id. (citing id. at 436-39)); and on

24  November 16, 2010, he again went to the emergency room complaining of back

25  pain where he was found to have tenderness to palpation at the thoracic spine with

26  a lumbar spasm, but an otherwise normal physical examination, including negative

27

28      [5] Social Security Rulings are binding on ALJs. See Terry v. Sullivan, 903
   F.2d 1273, 1275 n.1 (9th Cir. 1990).

11

1    straight leg raises, and a normal gait (id. (citing id. at 430-35)).

2         The ALJ also reviewed the March 15, 2011, report from the spine clinic,

3    which noted that Plaintiff had some discomfort walking and getting on the

4    examination table; had lumbosacral tenderness to palpation, guarding, and

5    restricted range of motion; and the straight leg raising test was mildly positive in

6    the right lower extremity, although full muscle strength was reported with

7    "decreased right lower extremity sensation in an L5 distribution." (Id. at 19

8    (citing id. at 392-93).)  On June 14, 2011, Plaintiff reported some "difficulty with

9    day to day activities including light household chores," and was found to have a

10   positive straight leg raising in the right lower extremity, decreased sensation in the

11   right L5 nerve distribution, but full motor strength in the bilateral lower

12   extremities. (Id. (citing id. at 386-97).)  However, the ALJ noted that an August

13   22, 2011, MRI "revealed only mild facet arthropathy, with no central canal or

14   neural foramina stenosis." (Id. (citing id. at 397).)  Thus, the medical evidence

15   supported the ALJ's finding that Plaintiff's back impairment was "not severe."

16        Plaintiff also complains that the ALJ failed to properly consider Plaintiff's

17   medical records relating to his lower back condition in determining his RFC. (JS

18   at 8.)  Specifically, he notes that the agency's internal medicine consultative

19   examiner, Aida Cruz, M.D., after noting his complaints of right lower extremity

20   numbness, "along with other multiple physical symptoms and limitations," limited

21   Plaintiff to no more than light work activity. (Id. (citing AR at 360).)  When the

22   ALJ reviewed Dr. Cruz's report, he noted that her physical examination was

23   benign, with no report of spinal problems or findings, and that she had found a

24   normal range of motion, intact sensation with a normal gait, and no difficulty

25   getting on and off the examining table. (AR at 23.)  As a result, the ALJ gave less

26   weight to Dr. Cruz's opinion that Plaintiff was limited to light exertional activity,

27   as it was supported by no significant findings. (Id.)  Plaintiff argues that the ALJ's

28   sole reliance on the opinions of the non-treating/non-examining state agency

reviewing physicians to find him capable of work at all exertional levels, instead of on the consultative examiner's opinions, was error.  (JS at 9-10.)

However, a review of the record shows the ALJ did not solely rely on the opinions of the non-treating/non-examining physicians in discounting Dr. Cruz's limitation to light work.  The ALJ also found that Dr. Cruz's conclusion was not supported by her own examination, and that no other treating or consulting medical evidence supported such a limitation.  As noted by the ALJ, at Plaintiff's September 13, 2010, examination by Dr. Cruz, Plaintiff did not mention any back pain, and Dr. Cruz found no spinal problems.  (Id. at 18, 23, 355-61.)  She noted Plaintiff was able to get on and off the examining table without difficulty, there was no tenderness to palpation in the midline or paraspinal areas of his back, the straight leg raising test was negative (both sitting and supine), and his range of motion of the back, and his gait, were within normal limits.  (Id. at 358, 360.) Despite these negative findings, including an assessment that there were "[n]o functional limitations," Dr. Cruz "inexplicably" limited Plaintiff to the full range of light exertional activity.  (Id. at 360 ("I find the claimant able to lift or carry 20 lbs. occasionally and 10 lbs. frequently.").)

Furthermore, as previously discussed, the ALJ also reviewed the treating physicians' records from the emergency rooms, the spine clinic, an MRI, and the opinion of the agency reviewing physicians, all of which supported the ALJ's finding that Plaintiff's back pains did not result in any functional exertional limitation.  Accordingly, the ALJ's determination to give less weight to this opinion of Dr. Cruz because it "inexplicably opined that the claimant was limited to light work" (id. at 23) despite her otherwise benign examination, was reasonable and supported by substantial medical evidence in the record.[6]

---

[6]  The Court notes that the bench assembler occupation suggested by the VE is classified as light exertional work.  See, e.g., DOT No. 706.684-022.  Thus,

(continued...)

1    Based on the foregoing, the Court finds that relief is not warranted on

2    Plaintiff's claim.

3                                    **IV.**

4                                   **ORDER**

5    Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be

6    entered affirming the decision of the Commissioner, and dismissing this action

7    with prejudice.

8

9    Dated: June 12, 2014

10                            HONORABLE OSWALD PARADA
                             United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26          [6](...continued)

27   even if Plaintiff was limited to light work as suggested by Dr. Cruz, any error was
     harmless.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir.
28   2008) (harmless-error rule applies to review of administrative decisions regarding
     disability).

                                      14